### SHAKESPEARE CO. v. CREEK CHUB BAIT CO. et al.

(Circuit Court of Appeals, Seventh Circuit. June 11, 1923.)

#### No. 3213.

Patents ⊙⟶328—777,488, claims 5 and 7, for fish bait, held void for want of novelty.

The Rhodes patent, No. 777,488, claims 5 and 7, for a fish bait or lure, the only feature of which not enumerated in a prior patent was a statement that the guiding fin was adapted to be bent to determine the position of the bait in the water, *held* void for want of novelty, in view of the possibility of using the fins of prior baits in that manner.

Appeal from the District Court of the United States for the District of Indiana.

Suit in equity for infringement of patent by the Shakespeare Company against the Creek Chub Bait Company and others. Decree for defendants, and complainant appeals. Affirmed.

Otis A. Earl, of Kalamazoo, Mich., for appellant.

Arthur M. Hood, of Indianapolis, Ind., for appellees.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. We are asked on this appeal to sustain patent No. 777,488, issued to Fred D. Rhodes, covering a "fish bait or lure." Claims 5 and 7 are in issue and read as follows:

"5. In a bait or lure, the combination of a body; suitable hooks thereon; and a guiding blade or fin formed of sheet metal, adapted to be bent, for the purpose specified."

"7. In a bait or lure, the combination of a body; suitable hooks; and a guiding blade or fin formed of sheet metal adapted to be bent, for the purpose specified."

Patentee describes the object of his invention as:

"The objects of this invention are, first to provide an improved fish bait or lure, which is adapted for use as a surface or as a casting bait and also as a deep-water or as a trolling bait; second, to provide an improved fish bait or lure, which may be readily adjusted to regulate the depth at which the same shall run in the water; third, to provide an improved fish bait or lure adapted to maintain its proper upright position in the water; fourth, to provide, in a fish bait or lure, an improved means of securing the hooks in position."

If the unpre-empted field were larger, if there was nothing in the prior art limiting or restricting appellant's field of operation, this combination claim might well be sustained. But, unfortunately for appellant, the fertile mind of the sportsman had labored industriously and successfully, with the result that the field wherein the inventor might explore had become much restricted.

But one invention covered by a patent, No. 360,339, to William A. Cooke, issued in 1887, covering "artificial bait for fishing," need be mentioned. Figure 1 is illustrative of the invention:

Claim 1 of this patent reads:

"1. The artificial minnow having a body of buoyant material, provided with fins and tail without twist or deflecting surfaces, and loaded or weighted in the belly, as and for the purposes hereinbefore set forth."

With this Cooke patent before us as part of the prior art, it is impossible to sustain the patent. Cooke says in his specifications:

"Under my invention, I make the body of the minnow of some light buoyant material—such, for instance, as cork or locust bark. Its fins and

tail are made of very light metal, or any other suitable material, and are put into proper place on the body."

Such a bait answers completely each and every element of claims 5 and 7. True, in both of these claims the fin formed of "sheet metal" (in the Cooke patent, "of very light metal or any other suitable material") is said to be "adapted to be bent." This is a combination claim, and covers, not the results, nor a use to which it may be devoted, but the various elements in combination. The advance represented by the suggested use of the fin was not patentable, nor could it constitute invention, for the combination described by Cooke was, like the combination described in the patent in suit, capable of such use. It therefore was quite immaterial who first discovered that bending the fin up would result in the bait seeking a higher level, or turning it down would cause it to go lower.

It must also be remembered that patentee was speaking to a class of people (the users) who, from time immemorial, have been famed for their great resourcefulness, for their creative ability, and for their bold and unfettered imagination. From childhood up, the disciples of Isaac Walton have evidenced great ingenuity and a fertility of resourcefulness which only a devotee of this sport can appreciate; and these deviceful qualities of mind and hand have naturally been directed to the subject of baits, and to the location or placing of baits in the water, so as to anticipate the habits of fish that change with the seasons of the year, or often with the hours of the day. To the experienced angler, these are the A, B, C's of the game.

To assume, then, that with Cooke's artificial minnow before him a piscator would not readily make use of the fins to control the location of the bait in the water, would not only necessitate the adoption of an extreme and violent premise, but would require us to attribute mental infirmity to a class who with justifiable propriety stoutly assert their virility.

The claims are void for want of patentable novelty.

The decree is affirmed.